UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISON

| | | |
|---|---|---|
| Jason Elenowitz, | ) | Civil Action No. 0:21-cv-2109-SAL |
| | ) | |
| Plaintiff, | ) | **Opinion and Order Adopting** |
| | ) | **Magistrate Judge's Report and** |
| v. | ) | **Recommendation** |
| | ) | |
| FedEx Ground Package System, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court for review of the Report and Recommendation of United States Magistrate Judge Paige J. Gossett (Report), made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.). [ECF No. 40.]

**PROCEDURAL BACKGROUND**

Jason Elenowitz (Plaintiff) filed this action pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.* and the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 *et seq.* [ECF No. 1.] Defendant filed a Motion for Summary Judgment, ECF No. 23, to which Plaintiff filed a Response, ECF No. 32, and Defendant filed a Reply, ECF No. 36. The Magistrate Judge issued her Report, ECF No. 40, in which she recommended granting Defendant's Motion for Summary Judgment. Attached to the Report was a Notice of Right to File Objections, telling the parties they had fourteen days from the date of service of the Report to file specific written objections. [ECF No. 40 at 18.] Plaintiff timely filed objections, ECF No. 42, to which Defendant filed a Reply, ECF No. 43. Plaintiff later filed a Notice of Supplemental Authority. [ECF No. 46.] The matter is ripe for ruling.

1

**REVIEW OF A MAGISTRATE JUDGE'S REPORT**

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The court is charged with making a de novo determination of only those portions of the Report that have been *specifically* objected to, and the court may accept, reject, or modify the Report, in whole or in part. 28 U.S.C. § 636(b)(1). In the absence of objections, the court need not provide an explanation for adopting the Report and must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas, LLC*, No. 0:15-cv-04009, 2017 WL 6345402, at *5 n.6 (D.S.C. Dec. 12, 2017) (citation omitted). A specific objection "requires more than a reassertion of arguments from the [pleading] or a mere citation to legal authorities." *Sims v. Lewis*, No. 6:17-cv-3344, 2019 WL 1365298, at *2 (D.S.C. Mar. 26, 2019). It must "direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). Thus, "[i]n the absence of *specific* objections . . . this court is not required to give any explanation for adopting the recommendation." *Field v. McMaster*, 663 F. Supp. 2d 449, 451–52 (4th Cir. 2009).

**SUMMARY JUDGMENT**

Summary judgment is appropriate if a party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In determining whether a genuine issue has been raised, the court must construe all inferences and

ambiguities in favor of the nonmoving party." *HealthSouth Rehab Hosp. v. American Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment bears the burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party meets its initial burden of showing there is no genuine issue of material fact, the non-moving party must then, by affidavits or other means permitted by the Rule, set forth specific facts showing there is a genuine issue for trial. *See* Fed. R. Civ. P. 56; *see also Celotex*, 477 U.S. at 233. A party asserting that a fact is genuinely disputed must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A litigant cannot "create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "[W]here the record taken as a whole could not lead a rational trier for fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1996).

## DISCUSSION

The Report sets forth in detail the relevant facts and standards of law on this matter, however, because of the detailed legal and factual findings required by the ADA and FMLA claims, a brief recitation is included here.

Plaintiff began working at Defendant's facility in Fort Mill, South Carolina in 2015. [ECF No. 40 at 1.] In 2016, he was promoted to operations manager. *Id*. Johnathan Trantham served as

3

Plaintiff's immediate manager until February 2019, when Plaintiff changed shifts and began reporting to Shane Wright and Brent Parsons. *Id.* at 2.

In January 2019, Plaintiff received a disciplinary infraction from Trantham for failing to properly ensure that each truck in the yard had been unloaded. *Id.* He received a second disciplinary infraction in August 2019 for unprofessional behavior, this time from Amy Argento, a manager higher up the chain of command than his immediate supervisor. *Id.* Plaintiff experienced an emotional breakdown in Wright's office following this second infraction. *Id.*

In late August 2019, Plaintiff sent a text message to Trantham saying "I'm not mentally well anymore" and asking him how Trantham took leave in the past. *Id.* at 3. Trantham told Plaintiff to call Defendant's third-party FMLA administrator and that he would need a doctor to sign off on the paperwork. *Id.*

Plaintiff was diagnosed with bipolar disorder, depression, and ADHD in September 2019. *Id.* Plaintiff disclosed this condition to Trantham, his former supervisor, but asked him to keep the conversation confidential. *Id.* Plaintiff subsequently told Wright and Parsons, his current supervisors, about his bipolar disorder and medications condition. *Id.* He told Wright he had been prescribed medications and was having trouble adjusting. *Id.* Plaintiff asked both Wright and Parsons to provide help moving trucks and managing his area but did not formally request an accommodation through Defendant's human resources department based on his condition.

Plaintiff received three more infractions between September 2019 and January 2020, one for using equipment without the proper certification and two for failure to complete safety reviews. *Id.* at 4.

On January 6, 2020, Plaintiff's doctor recommended he take leave from work to transition to new medication. *Id.* The doctor warned that the new medicine could make Plaintiff experience

fatigue and difficulty with concentrating, yet he returned to work anyway. *Id.* Plaintiff subsequently received another infraction for failing to properly ensure that the trucks in the yard had been unloaded. *Id.* This infraction found Plaintiff once again before Argento, who noted this was the second time in less than a year Plaintiff had failed to properly complete a yard check and reviewed all of Plaintiff's infraction from the year before. *Id.* at 4-5. Given Plaintiff's poor performance—especially twice failing to properly inspect the trucks in the yard—Argento decided Plaintiff should be terminated. *Id.* at 5. Argento began termination proceedings on January 7, 2020. *Id.*

On January 8, 2020, Plaintiff submitted a request for short-term disability under the FMLA, which was granted. *Id.* The termination review continued while Plaintiff was on leave. *Id.* Plaintiff returned to work on January 22, 2020 and was terminated on January 28, 2020. *Id.*

Plaintiff filed suit in July 2021, raising claims for failure to accommodate and retaliatory termination under the ADA and interference and retaliation in violation of the FMLA. *Id.* Plaintiff voluntarily withdrew his FMLA retaliation claim. The Magistrate Judge's Report recommends granting summary judgment as to Plaintiff's three remaining claims. *Id.* Plaintiff does not challenge the Magistrate Judge's recommendation as to his ADA retaliation claim. The only matters left before the court are Defendant's Motion for Summary Judgment as to Plaintiff's claims for failure to accommodate under the ADA and interference under the FMLA. *Id.*

1. **Failure to Accommodate Under the ADA**

Plaintiff alleges Defendant violated his rights under the ADA by failing to make reasonable accommodations in September 2019 after he was diagnosed with bipolar disorder and began adjusting to new medications. In her Report, the Magistrate Judge recommends granting summary judgment on this claim because Plaintiff did not present evidence that a reasonable accommodation

5

could have permitted him to perform the essential functions of his job. Specifically, Plaintiff failed to produce evidence of the essential functions of his job—information the court needed to evaluate what a reasonable accommodation might have been or how long he would have needed to adjust to his change in medicine in September 2019. In his objections, Plaintiff again fails to point to evidence in the record of what his job duties included. Instead, Plaintiff objects on the grounds Defendant failed to engage in a discussion regarding appropriate accommodations, and Defendant should have offered him FMLA leave as a reasonable accommodation.

    a.  **Failure to Engage**

To show an employer failed to accommodate an employee under the ADA, the plaintiff must prove (1) that he had a disability within the statutory meaning; (2) that the employer knew of his disability; (3) that a reasonable accommodation would permit him to perform the essential functions of his position; and (4) that the employer refused to make an accommodation. *Perdue v. Sanof-Aventis U.S., LLC*, 999 F.3d 954, 959 (2021).

An employer's duty to engage in an interactive process with an employee to identify a reasonable accommodation is generally triggered when an employee communicates his disability to his employer and expresses his desire for an accommodation. *Wilson v. Dollar Gen.*, 717 F.3d 337, 346–47 (4th Cir. 2013.) An employer is not liable for failing to engage in the interactive process if the employee cannot identify a reasonable accommodation that would enable the employee to perform his job's essential functions. *Id*. at 347. The burden of identifying a reasonable accommodation rests with the employee. *Lamb v. Qualex, Inc.*, 33 F. App'x 49, 59 (4th Cir. 2002). Only once the employee meets this burden may the employer then present evidence that the requested accommodation imposes an undue hardship on the employer. *Id.*

The Magistrate Judge found Plaintiff's statements to his immediate supervisors in September 2019 regarding his diagnosis of bipolar disorder, adjustment to his medication, and requesting assistance with his job were enough to put Defendant on notice that Plaintiff sought an accommodation for his disability. [ECF No. 40 at 10.] Despite this, the Magistrate Judge found Plaintiff failed to prove as a matter of law that a reasonable accommodation would permit him to perform the essential functions of his position because he offered no evidence of what his job functions were. *Id*. at 10-12.

Instead of pointing to evidence of his job responsibilities, Plaintiff merely recites case law stating employers are required to engage in a good-faith effort to identify a reasonable accommodation with employees. [*See, e.g.*, ECF No. 42 at 3.] The court does not deny that Plaintiff presents the correct legal standard. He fails, however, to support his argument with an adequate factual basis for the court to determine "what the essential functions of his job were and whether his proposed accommodations were reasonable in light of those functions." [ECF No. 40 at 11.] Because Plaintiff has failed to present evidence that would allow the court to determine what the essential functions of his job were, Plaintiff's failure to accommodate claim fails as a matter of law.

**b. FMLA Leave**

Next, Plaintiff objects to the Magistrate Judge's finding that Defendant did not have to offer him FMLA leave because he failed to "point to any evidence of how much FMLA time he needed to adjust to his medication." *Id.* at 12. Plaintiff objects on the grounds that he provided evidence it "took him a little more than a week" to adjust to new medication during his FMLA leave period from January 22 to 28, 2020. [ECF No. 42 at 5.]

In determining whether leave would have enabled an employee to perform the essential functions of his position, the employee must show that, had he been granted leave, he could have

7

performed the essential functions of his job when he returned. *Wilson*, 717 F.3d at 346. A reasonable accommodation enables the employee to perform the essential functions of his job either at the time requested or in the near future *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995). An employer need not wait an indefinite period for an accommodation to achieve its intended effect. *Id.* Furthermore, it is improper for the court to consider evidence of an employee's abilities beyond his return date when making this decision. *Wilson*, 717 F.3d at 346. n.8.

The court agrees with the Magistrate Judge that information related to the January 2020 adjustment period is irrelevant to determining how long it would have taken Plaintiff to adjust to medication in September 2019. Again, Plaintiff's objection fails to point to evidence of how long it would have taken him to adjust to his new medication in September 2019. Defendant was therefore under no obligation to offer him short-term FMLA leave in September 2019 as a reasonable accommodation.

Because Plaintiff has offered no evidence of what the essential functions of his job were or how long it would have taken him to adjust to his new medications in September 2019, his objections to the Magistrate Judge's finding on his ADA failure to accommodate claim are overruled.

**2. FMLA Interference**

Plaintiff also objects to the Magistrate Judge's finding that he failed to produce evidence in support of his FMLA interference claim. The Magistrate Judge found Plaintiff never requested leave and Defendant never had constructive notice that Plaintiff needed to take FMLA leave until his formal request in January 2020. [ECF No. 40 at 15.] Plaintiff argues the Magistrate Judge errs because he gave Defendant constructive notice of his need for FMLA leave when speaking with his supervisors about his bipolar diagnosis. Plaintiff also argues the Magistrate Judge erred in allowing and relying on Defendant's argument that the text messages Plaintiff sent to his former

manager did not put Defendant on notice. According to Plaintiff, Defendant made this argument for the first time in its Reply to Plaintiff's Response in Opposition to Summary Judgment, ECF No. 36.

### a. Defendant's Constructive Notice of Plaintiff's Need for FMLA Leave

Plaintiff argues that by disclosing his bipolar diagnosis to Wright and Parsons, discussing his new medication and its side effects with them, and requesting their help while adjusting to his new medicine, he gave Defendant constructive notice of his need for FMLA leave. The court disagrees.

To establish an FMLA interference claim, Plaintiff must show (1) he is entitled to an FMLA benefit; (2) his employer interfered with the provisions of that benefit; and (3) that interference caused harm. *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015). An employee seeking leave for an FMLA-qualifying reason need not expressly assert his rights under the FMLA or even mention the FMLA in his leave request. See *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 295 (4th Cir. 2009). Even so, he must provide enough information for an employer to reasonably determine whether the FMLA may apply to the leave request. *Shoemake v. Alcon Labs., Inc.*, 741 F. App'x 929, 932 (4th Cir. 2018). At the very least, the employee must provide verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave. *Rhodes v. F.D.I.C.*, 257 F.3d 373, 382–83 (4th Cir. 2001) (citing 29 C.F.R. § 825.302(c)).

The Magistrate Judge found Plaintiff failed to put forth evidence his medical condition was so apparent that his supervisors should have been aware he needed to take medical leave, and this court agrees. In his objection, Plaintiff offers no evidence that he asked for medical leave in September 2019. Instead, he cites a Seventh Circuit opinion, *Valdivia v. Twp. High Sch. Dist. 214*, 942 F.3d 395 (7th Cir. 2019), to support his argument that his conversation with his supervisors should have put Defendant on notice of his need for FMLA leave. The facts in *Valdivia*, however,

differ greatly from those in this case: there, the employee met with her supervisor on several occasions, asked for an accommodation that would result in a ten-month position rather than a twelve-month position, and said that she could not accept a new work assignment. *Id.* at 400.

Here, Plaintiff had one conversation with each of his supervisors. Rather than asking for an accommodation or refusing new work, he simply asked for help with his current assignment. The court is not persuaded that *Valdivia* applies to Plaintiff's case, nor is the court convinced that what he communicated to Wright and Parsons constitutes verbal notice sufficient to make the employer aware that Plaintiff needed FMLA-qualifying leave.

### b. Plaintiff's Text Messages to His Former Manager

Plaintiff objects that the Magistrate Judge improperly considered Defendant's argument that Plaintiff's text messages to Trantham, his former manager, could not put Defendant on notice of his need for FMLA leave because Defendant made this argument for the first time in its reply brief, citing *Hamed v. Saul*, 432 F. Supp. 3d 610, 613 (E.D. Va. 2020).

In *Hamed*, the district court found the plaintiff procedurally waived an issue by raising it for the first time in his reply brief to the defendant's cross motion for summary judgment. *Id.* The court stated, "ordinarily it is improper to consider arguments raised for the first time in a reply brief 'because it would be unfair to the appellee and would risk an improvident or ill-advised opinion on the legal issues raised.'" *Id.* (citing *Hunt v. Nuth*, 57 F.3d 1327, 1338 (4th Cir. 1995)). This court takes no issue with the principle stated in *Hamed*, but finds it is inapplicable in this case because Defendant raised leave policy compliance in its Motion for Summary Judgment, ECF No. 23-1.

In its Motion for Summary Judgment, Defendant argued

> Plaintiff cannot demonstrate [Defendant] interfered with [his] use of FMLA leave…. Plaintiff was aware of [Defendant's] FMLA Policy

10

> and the process of requesting leave under the FMLA. Plaintiff was aware that [Defendant] used a third-party administrator for its FMLA leave … [and] had previously taken FMLA leave while employed by [Defendant]…. As [Plaintiff] cannot show that he would have exercised his FMLA rights between September 2019 and January 2020 if he had been provided formal notice of his … rights, he cannot demonstrate any harm. This is supported by the fact that he knew [Defendant's] FMLA Policy, the process for requesting FMLA leave, and that he had previously requested leave.

[ECF No. 23-1 at 21.] Thus, Defendant raised Plaintiff's failure to follow the process for requesting leave in its Motion for Summary Judgment.

Plaintiff argued in his Response in Opposition that

> [Defendant's] policy permitted [Plaintiff] to notify Trantham [his former manager] of his need for FMLA leave (i.e., Trantham is considered "local management.")…. [Defendant] first interfered with [Plaintiff's] rights as early as August 2019 when [Plaintiff] reached out to Trantham, his former manager, regarding potential leave and information Trantham that he was "not mentally well."

[ECF No. 32 at 30.] In its Reply, ECF No. 36, Defendant countered this argument, arguing "Defendant's policy requires that leave requests be made to the employee's supervisor" and pointing to many examples where Defendant requires an employee to take up issues of leave and FMLA requests with "his or her manager." *Id.* at 10.

The Magistrate Judge properly relied on Defendant's argument that Plaintiff failed to trigger its duty to provide notice under the FMLA because, despite being aware of the policy, Plaintiff failed to follow the proper procedure for requesting leave. Defendant's argument that Plaintiff was aware of the proper steps to request leave was part of its argument in support of its Motion for Summary Judgment from the beginning, not something suddenly raised in Defendant's Reply. The principle pronounced in *Hamed* is therefore inapplicable here. This court finds Plaintiff was not prejudiced by the Magistrate Judge considering Defendant's argument that Plaintiff did not put it on notice of his need for FMLA leave by contacting his former manager.

11

Plaintiff objects to the Magistrate Judge's finding that his text message to Trantham saying "How did you go about taking your leave. I think I need to take one. I'm not well" did not put Defendant on notice of his need for FMLA leave. As discussed above, however, the Magistrate Judge considered this text message to Trantham and properly rejected it on the basis it fell outside the parameters of Defendant's leave request policy. Plaintiff's objection is overruled. *See* 29 C.F.R. 825.302(d), 303(c) (stating that an employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for both foreseeable and unforeseeable leave requests).

### 3. *Webb v. Daymark Recovery Servs. Inc.* and Its Application to the Instant Case

Finally, after the period for responding to objections expired, Plaintiff submitted a Notice of Supplemental Authority. [ECF No. 46.] Plaintiff argues that *Webb v. Daymark Recovery Servs., Inc.*, 1:21CV424, 2022 WL 17820279 (M.D. N.C. Dec. 20, 2022) supports his argument that Defendant interfered with his rights by failing to provide him with notice of his rights and responsibilities under the FMLA and that Plaintiff was prejudiced by Defendant's failure to provide him with rights and responsibilities. [ECF No. 46 at 2.] A month has passed since Plaintiff filed this Notice, and Defendant has not answered.

The court finds *Webb* inapplicable to the instant case because, as discussed above, Plaintiff has failed to establish Defendant was ever put on notice of his request for FMLA leave. The plaintiff in *Webb*, by contrast, put his employer on notice:

> Webb called [his three bosses] to tell them his son was seriously injured… and that he needed to use his accrued sick leave … to care for his son and did not know when he would return to work. Webb was told to go care for his son and Williams would take care of his leave. At no time during these conversation did [any of his bosses] notify Webb of his rights and responsibilities under the FMLA.

12

2022 WL 17820279, at *4. The only dispute in *Webb* was whether plaintiff was prejudiced by his employer's failure to provide him with the requisite notice. *Id*. at *12. But in this case, Plaintiff has failed to show that Defendant was given notice that Plaintiff was entitled to leave. *Webb* is thus inapplicable and does not alter this court's adoption of the Report.

## CONCLUSION

The court adopts the Report in full and incorporates it by reference in this Order. Defendant's Motion for Summary Judgment, ECF No. 23, is **GRANTED**, and this case is **DISMISSED WITH PREJUDICE.**

IT IS SO ORDERED.

                                                  s/ Sherri A. Lydon
                                                  Sherri A. Lydon
                                                  United States District Judge

March 13, 2023
Columbia, South Carolina